FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 07, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHAWN C.,[1]

                Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                Defendant.

No.   1:23-cv-03040-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

       Due to major depressive disorder, anxiety disorder, personality disorder, attention deficit hyperactivity disorder (ADHD), obesity and diabetes, Plaintiff Shawn C. claims she is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly assessed Plaintiff's credibility, and the ALJ improperly analyzed the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

opinions of the evaluating medical sources, Dr. Genthe, Dr. Nelson, and Dr. Eisenhauer. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In June 2020, Plaintiff applied for benefits under Title 2 and Title 16, claiming disability beginning May 30, 2011, based on the physical and mental impairments noted above.[2]

After the agency denied Plaintiff benefits, ALJ Meyers held a telephone hearing in April 2022 at which Plaintiff appeared with her representative.[3] Plaintiff and a vocational expert testified.[4] Plaintiff testified that she last worked full-time in 2011 but lost her job when a co-worker with seniority took her job and that in the year following her house burned down, her mother died, and she "lost everything else, one thing after another."[5]

---

[2] AR 214, 223.

[3] AR 39-63.

[4] *Id.*

[5] AR 51-52.

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions: the ALJ found:

- The opinions of state agency evaluator Gary L. Nelson, PhD, to be persuasive.

- The opinions of state agency evaluator Renee Eisenhauer, PhD, to be more persuasive.

- The opinions of examining source Thomas Genthe, PhD, to be unpersuasive.[8]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2014.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 30, 2011, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder, anxiety disorder, personality

---

[6] AR 12-34.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 22-25.

[8] AR 27.

disorder, and ADHD.  The ALJ also found that obesity, hypertension, and diabetes were non-severe.[9]

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform a full range of medium work with the following exceptions:

  She can remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs.  She can have no contact with the public. She can work in proximity to but not in coordination with co-workers. She can have occasional contact with supervisors.  She can work only in routine, predictable work environment with few changes.  She cannot perform fast-paced production work and can only perform jobs with short training periods.

- Step four: Plaintiff is unable to perform past relevant work of a composite job as a fast-food cook, a cook helper/prep cook, and a cashier II.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cleaner of laboratory

---

[9] Although the ALJ referenced Plaintiff as being "hyperactive" it is clear that he intended to state "hypertensive." *See, e.g.*, AR 18.

1    equipment (DOT 381.687-022), hand packager (DOT 920.587-018),

2    and floor waxer (DOT 381.687-034).[10]

3        Plaintiff timely requested review of the ALJ's decision by the Appeals

4    Council and now this Court.[11]

5    **II.    Standard of Review**

6        The ALJ's decision is reversed "only if it is not supported by substantial

7    evidence or is based on legal error,"[12] and such error impacted the nondisability

8    determination.[13] Substantial evidence is "more than a mere scintilla but less than a

9    preponderance; it is such relevant evidence as a reasonable mind might accept as

10    adequate to support a conclusion."[14]

11

12

13    [10] AR 15-30.

14    [11] AR 198.

15    [12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §§ 405(g),
     1383(g).

16    [13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other*

17    *grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a) (recognizing that the court may

18    not reverse an ALJ decision due to a harmless error—one that "is inconsequential

19    to the ultimate nondisability determination").

20    [14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

21    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

22    court "must consider the entire record as a whole, weighing both the evidence that

23

1
2
3
4
5
6
7
8
9
10
11

### III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints and the medical opinions.  The Commissioner argues there was no error because the ALJ properly evaluated Plaintiff's subjective complaints and considered that objective medical evidence undermined Plaintiff's complaints, Plaintiff had gaps in treatment which she did not adequately explain, Plaintiff's daily activities were not consistent with her allegations, and Plaintiff's condition would have improved with treatment, and the ALJ properly evaluated the opinion evidence.  The Court disagrees with the Commissioner. As is explained below, the ALJ's analysis contains consequential error.

12

**A.    Symptom Reports: Plaintiff establishes consequential error.**

13
14
15

Plaintiff argues the ALJ failed to provide valid reasons for discounting her mental symptom reports. The ALJ offered several reasons for discounting Plaintiff's symptom reports—each reason is addressed below.

16
17
18

_____

19
20
21
22
23

supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1    1.    Standard

2    The ALJ must identify what symptom claims are being discounted and

3    clearly and convincingly explain the rationale for discounting the symptoms with

4    supporting citation to evidence.[15] This requires the ALJ to "show his work" and

5    provide a "rationale . . . clear enough that it has the power to convince" the

6    reviewing court.[16]

7    When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry.

8    "First, the ALJ must determine whether there is objective medical evidence of an

9

   _____

10   [15] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by

11   the ALJ when evaluating the intensity, persistence, and limiting effects of a

12   claimant's symptoms include: 1) daily activities; 2) the location, duration,

13   frequency, and intensity of pain or other symptoms; 3) factors that precipitate and

14   aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any

15   medication the claimant takes or has taken to alleviate pain or other symptoms; 5)

16   treatment, other than medication, the claimant receives or has received for relief of

17   pain or other symptoms; 6) any non-treatment measures the claimant uses or has

18   used to relieve pain or other symptoms; and 7) any other factors concerning the

19   claimant's functional limitations and restrictions due to pain or other symptoms.

20   Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c);

21   *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

22   [16] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (alteration added).

23

1 underlying impairment which could reasonably be expected to produce the pain or

2 other symptoms alleged."[17] Second, "[i]f the claimant meets the first test and there

3 is no evidence of malingering, the ALJ can only reject the claimant's testimony

4 about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing

5 reasons' for the rejection."[18] General findings are insufficient; rather, the ALJ must

6 identify what symptom claims are being discounted and what evidence undermines

7 these claims.[19] "The clear and convincing standard is the most demanding required

8 in Social Security cases."[20] Therefore, if an ALJ does not articulate specific, clear,

9 and convincing reasons to reject a claimant's symptoms, the corresponding

10 limitations must be included in the RFC.[21]

11

12 
_____

[17] *Molina*, 674 F.3d at 1112.

13

[18] *Ghanim* 763 F.3d at 1163(quoting *Lingenfelter*, 504 F.3d at 1036).

14

[19] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v.*

15 *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

16 explain why he discounted claimant's symptom claims)).

17 [20] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

18 *of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

19 [21] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing

20 reasons for finding Lingenfelter's alleged pain and symptoms not credible, and

21 therefore was required to include these limitations in his assessment of

22 Lingenfelter's RFC.").

23

1

2. <u>Plaintiff's Testimony</u>

2

On April 21, 2022, Plaintiff appeared with her attorney for a hearing before

3

ALJ Meyers.[22]  Plaintiff testified and vocational expert Francine Geers testified.[23]

4

Plaintiff testified that she was 48 years old and lived with her husband.[24] Plaintiff

5

said that she has a driver's license and drives her husband's car to go to the grocery

6

store.[25]  She said that she shops alone but on some days will turn around and go

7

home because she does not want to deal with people.[26] Plaintiff testified that her

8

husband recently had surgery to remove his large toe but that he was caring for

9

himself.[27] Plaintiff said her 22-year-old son lives with them and works part-time

10

but does not contribute to the household because he pays his own bills and that

11

they are renting to own the home they live in and have four years of payments left

12

to make.[28]  Plaintiff said that neither her son nor her husband have any physical or

13

mental impairments but that her husband was trying to get paid under the Family

14

15

16

[22] AR 39-63.

17

[23] AR 41.

18

[24] AR 45.

19

[25] AR 45-46.

20

[26] AR 46.

21

[27] *Id.*

22

[28] AR 47.

23

Medical Leave Act because of his recent surgery.[29]  She explained that her husband

works the night shift in a food warehouse as a sanitation worker and that during

the day he is usually sleeping or watching television.[30]

Plaintiff testified that she had not left the area in the last couple years and

had not traveled out of state in over twenty years.[31]  She said she has no source of

income and stopped receiving public benefits when her husband started working,

about a year prior.[32]  She said her son helps around the house and takes cares of

her dog and her cats.[33]  Plaintiff said that her mental illness began about ten years

prior and that she had not worked even part-time since 2011.[34]  She said that her

mental health issues began after she lost her job and that she lost her job when

they closed one of the branches and a person with seniority took her job.[35]  She said

that if she had not lost her job she did not think she would have been able to work

because in 2011 her father was hospitalized, her mother died, and she lost her

---

[29] AR 47-48.

[30] AR 48.

[31] AR 48-49.

[32] AR 49.

[33] AR 49-50.

[34] AR 50.

[35] AR 50-51.

house.[36]  Plaintiff said she had a gap in mental health treatment from June 2017 to December 2019 because she lost her health insurance, she had a verbal dispute with her counselor, and her counselors changed locations and were temporarily closed.[37] She said she did not go to other counselors because she did not know any others who treated people without insurance in the area.[38]  She said she currently had Obamacare insurance.[39] Plaintiff testified that during covid she did not get treatment because she was told she could not go anywhere and she was not offered telehealth because her counselor left and she was told she needed to find a new counselor.[40]

Plaintiff said that when she applied for public assistance a psychologist called her and interviewed her.[41]  She described a panic attack as not being able to breath, getting shaky and feeling like she would pass out and said that they last anywhere from thirty minutes to three hours but that her medication helps.[42] She

---

[36] AR 51.

[37] AR 52.

[38] AR 52-53.

[39] AR 53.

[40] AR 53.

[41] AR 53-54.

[42] AR 55.

said that they changed her from Xanax to lorazepam because of side effects.[43] She

said that if she has a panic attack when she is out she will have to leave and go

back in about two hours.[44]  She said that she will get about two panic attacks a

week if she is not going out anywhere and about three or four if she is going out.[45]

She said she has two or three days a week when she will not leave her room.[46]

      3.   The ALJ's Findings

      The ALJ found Plaintiff's statements concerning the intensity, persistence,

and limiting effects of her "medically determinable impairments" partially

inconsistent with the objective medical evidence, inconsistent with the fact that she

had not more diligently sought treatment, inconsistent with her daily activities,

and caused primarily by economic circumstances which were not a basis for

disability. [47]

      4.   Relevant Medical Records

      Plaintiff's record is limited but indicates treatment for both physical and

mental impairments.

---

[43] *Id.*

[44] AR 55-56.

[45] AR 56.

[46] *Id.*

[47] AR 22-25.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        a.     <u>*Highline Medical Center*</u>

On January 18, 2011, Plaintiff presented with back pain.[48] On examination, Dr. Susan O'Brien noted that Plaintiff appeared to be in pain and was in moderate distress, was oriented, had normal mood and affect, and had no motor deficits.[49] On October 31, 2011, Plaintiff presented with complaints of sudden abdominal pain.[50] Plaintiff was assessed to be in severe distress but was alert and oriented with no motor deficit.[51]

On February 29, 2012, Plaintiff presented with flank pain.[52] On January 18, 2013, Plaintiff presented with flank pain.[53]  On examination, she was noted to be oriented, anxious, and in mild distress.[54]  She was released with a good prognosis.[55] On examination, she was noted to be oriented with no motor deficit.[56]

---

[48] AR 477.

[49] AR 478.

[50] AR 458.

[51] AR 459.

[52] AR 454.

[53] AR 443.

[54] *Id.*

[55] AR 444.

[56] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     *b.*    <u>*Comprehensive Healthcare*</u>

On April 14, 2014, Plaintiff presented to Chris Clark, LMHC, and Deborah Blaine, LMHC, at the clinic as a walk-in, reporting anxiety, panic attacks, and depression.[57]  She was assessed to be a moderate risk level.[58] On examination, Plaintiff was anxious; had rapid and pressured speech; was tearful and labile; and endorsed social restriction.[59] She was diagnosed with major depression, first episode, severe; and assigned a current GAF score of 44 and an estimated high GAF score in the last year of 50.[60]

On May 28, 2014, Plaintiff presented to Shirly Goodman, LMHC, with a tearful and depressed affect and mood and reported that she still had difficulty sleeping.[61]

On June 19, 2014, Plaintiff presented to LMHC Goodman for treatment and requesting mood stabilization.[62]  She was assigned a current GAF score of 44 and a highest GAF score of 50 for the last year, which was unchanged from her initial

---

[57] AR 300

[58] AR 301.

[59] AR 302.

[60] AR 302-303.

[61] AR 316.

[62] AR 310.

assessment.[63]  On August 22, 2014, Plaintiff presented to LMHC Goodman reporting sleep disturbance, anxiety, panic attacks, and emotional outbursts.[64] LMHC Goodman noted that Plaintiff's mood was better than at her prior visit.[65]

On September 15, 2014, Plaintiff presented to ARNP Carolyn Pingel for a psychiatric evaluation.[66] Plaintiff reported frequent crying, difficulty sleeping, anxiety, difficulty concentrating, and panic attacks.[67] Plaintiff reported that her anxiety began in March 2011 when her mother passed away.[68]  Plaintiff reported past psychiatric treatment but no hospitalizations and medication with lorazepam, fluoxetine, and Xanax, but having run out of medication two weeks prior.[69] Plaintiff reported prior treatment with the Farm Workers Clinic but stopped treatment due to money and transportation issues.[70]  On examination, she was oriented with normal speech and thoughts; no delusions, hallucinations, or paranoia; adequate fund of knowledge; fair insight; difficulty with focus and

---

[63] *Id.*

[64] AR 313.

[65] AR 313.

[66] AR 296.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] AR 297.

concentration; decreased energy, depressed mood, constricted affect, and stable gait with limp.[71] ARNP Pingel diagnosed major depression and anxiety and opined that Plaintiff had a current GAF of 42 and that her highest GAF in the past year was 44.[72]

On January 6, 2015, Plaintiff presented to LMHC Goodman for treatment and requesting mood stabilization.[73]  She was assigned a GAF score of 44.[74]

On May 17, 2015, Plaintiff presented to LMHC Goodman, for treatment and requesting mood stabilization.[75]  She was assigned a GAF score of 44.[76]

c.    *Farm Workers Clinic*

On May 20, 2014, Plaintiff presented to PA Amy Turner for follow up care after an ER visit for a spider bite.[77] She was also requesting medication for anxiety and depression and reported she had not seen a doctor for ten years.[78] On examination, Plaintiff was anxious but pleasant, was not tangential, had poor

---

[71] AR 297-298.

[72] AR 298.

[73] AR 309.

[74] *Id.*

[75] AR 306.

[76] AR 308.

[77] AR 324.

[78] *Id.*

insight and fair eye contact.[79]  On July 2, 2014, Plaintiff presented to PA Turner

for follow-up for depression and anxiety.[80] Plaintiff reported that her medication

was helping and that in the last few weeks she had only needed to take six

Xanax.[81] On August 22, 2015, Plaintiff presented to PA Turner for an annual

examination and was noted to be taking Xanax and fluoxetine.[82]  PA Turner noted

that on examination Plaintiff was well-groomed, tearful, with pleasant affect, poor

insight, and nontangential speech.[83]

On December 1, 2016, Plaintiff presented to PA Turner after not coming to

the clinic for a year and a half.[84]  Plaintiff reported that she stopped taking her

medication because she did not like her counselor but she continues with severe

anxiety and moderate depression and wanted to resume treatment.[85]  She was

referred to psychiatry.[86] On March 10, 2017, Plaintiff returned for a follow-up visit

with PA Turner and reported that she had tried twice to do an intake with CMH

---

[79] AR 325.

[80] AR 335.

[81] *Id.*

[82] AR 328.

[83] AR 334.

[84] AR 347.

[85] *Id.*

[86] AR 349.

for psychiatric care but that there were no appointments available.[87]  PA Turner

noted that Plaintiff had severe social phobia and panic attacks when in public.[88]

On examination, PA Turner described Plaintiff as tearful and extremely anxious,

with non-tangential speech, good eye contact, and fair insight.[89]

### d.    Memorial Hospital

On May 10, 2014, Plaintiff presented to Wyatt Rivas, MD with an insect bite

and was noted to have a history of anxiety but on examination was oriented with

normal speech and normal affect.[90] On January 5, 2015, Plaintiff presented to Joan

Knight, MD, with jaw pain and swelling and was noted to have a history of anxiety

but on examination was oriented with normal speech and normal affect.[91] On

September 30, 2020, Plaintiff presented to John Cooper, DO, with dental pain and

missing several teeth.  She was noted to be unkempt.[92] On mental status

examination, Plaintiff was noted to have normal mood and affect and to be

oriented.[93]

---

[87] AR 352.

[88] Id.

[89] AR 353.

[90] AR 421-422.

[91] AR 415-416.

[92] AR 399.

[93] AR 400.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     e.  _Thomas Genthe, PhD_

  On June 16, 2020, Plaintiff was examined by consultative examiner Thomas

Genthe, PhD at the request of the Department of Social and Human Services.[94]

Plaintiff presented with complaints that she gets anxiety in public with

claustrophobia and that she has had agoraphobia since her mother's death in

2011.[95]  Plaintiff reported that she is married, living in a rented house, has a

drivers license and car, and has no significant difficulty getting along with others.[96]

Plaintiff reported that in the past she received treatment and prescribed

medication but was currently not receiving treatment or medication, that she

completed to the eleventh grade, and that she had not worked since 2011 due to

homelessness and anxiety.[97] Plaintiff denied substance use and said that she has

no hobbies but watches television for most of the day.[98] Plaintiff reported that she

is able to bathe and groom herself; prepare meals; perform household activities

such as washing dishes, doing laundry, vacuuming, and dusting; managing her

medications; scheduling and attending appointments; mailing items; and shopping

---

[94] AR 436-442.

[95] AR 436.

[96] _Id._

[97] AR 437.

[98] _Id._

1    for groceries.[99]  Plaintiff reported the following symptoms of depression: frequent

2    crying and isolating.[100] Plaintiff reported the following symptoms of ADHD: failing

3    to pay attention, being easily distracted, being easily bored, poor follow through,

4    procrastinating, losing things, impulsiveness, fidgeting, and restlessness.[101]  Dr.

5    Genthe diagnosed Plaintiff with major depressive disorder, with anxious distress,

6    agoraphobia, ADHD, and rule out other Personality Disorder.[102] Dr. Genthe found

7    that Plaintiff had fair to poor insight and judgment, that the chances she would

8    comply with treatment were fair, and that her level of social maturity was poor.[103]

9        On examination, Plaintiff had a normal rate of speech but provided excessive

10   information, she was cooperative and open, she described her mood as alright, and

11   did not present with delusions or hallucinations.[104] Plaintiff presented with a

12   history of depression and anxiety and was tangential and circumstantial in her

---

[99] AR 437-438.

[100] AR 438.

[101] *Id.*

[102] *Id.*

[103] AR 442.

[104] AR 441.

DISPOSITIVE ORDER - 20

thought process.[105]  Plaintiff was oriented and had normal perception, memory, fund of knowledge, abstract thought, and concentration.[106]

Dr. Genthe opined that Plaintiff had the following marked impairments in the following abilities: understand, remember and persist in following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior; complete a normal work day or work week without interruption; and set realistic goals.[107] Dr. Genthe opined that Plaintiff had moderate impairments in the following abilities: perform activities in a schedule without special supervision, learn new tasks, be aware of hazards and take precautions, and ask questions or request assistance.[108] Dr. Genthe opined that Plaintiff's impairments were not the result of substance use, would be expected to last twelve months, and might be minimized or eliminated with the use of services or vocational training.[109]  Dr. Genthe wrote a narrative paragraph explaining that based on his examination Plaintiff suffers from ADHD which is not managed and likely to interfere with employment.[110]

---

[105] *Id.*

[106] AR 441-442.

[107] AR 439.

[108] *Id.*

[109] AR 439-440.

[110] AR 440.

1    Dr. Genthe recommended treatment for the ADHD symptoms and psychosocial

2    stressors which contribute to her anxiety.[111] Dr. Genthe opined that Plaintiff's

3    prognosis was moderate and that if she participated in treatment she would need

4    twelve months to effectively treat her condition.[112]

5        5.    Analysis

6        As an initial matter, the Court notes that the medical record supports

7    Plaintiff's contention that she suffered from severe impairments prior to the date

8    she was last insured on March 31, 2014.  While her mental health treatment did

9    not begin until April 14, 2014, two weeks after her date last insured, the counselors

10   who assessed her condition opined that she had a current GAF score of 44 and that

11   the highest her GAF had been in the prior year was 50.[113]  Pursuant to the DSM

12   IV, a GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe

13   obsessional rituals, frequent shoplifting) OR any serious impairment in social,

14   occupational, or school functioning (e.g., no friends, unable to keep a job)."[114]

15   Although GAF scores are not contained in later editions of the DSM, they were

16   commonly used at the time of Plaintiff's examination in 2014, and are evidence

17   _____

18   [111] *Id.*

19   [112] *Id.*

20   [113] AR 302-303.

21   [114] Diagnostic and Statistical Manual of Mental Disorders, DSM IV, Fourth Edition,

22   American Psychiatric Association.

23

that qualified medical sources found Plaintiff to have severe mental impairments of a long-standing nature.  The Court will address the reasons given by the ALJ to find Plaintiff's subjective complaints less than credible.

> a.    *The ALJ's reasoning that Plaintiff's allegations are inconsistent with the medical record.*

The ALJ provided the following reasoning:

> During appointments, the claimant's treatment providers and examiners have often observed the claimant with cooperative, pleasant, friendly, attentive, and conversative behavior (*See e.g.*, 2F8, 17, 31; 3F22, 28; 4F6; 8F6), fair to good eye contact (*See e.g.*, 2F8, 36), and adequate hygiene and grooming (*See e.g.*, 2F17, 36; 3F22, 27-28).  At times, she has depressed, sad, tearful, liable, anxious, congruent, unstable, or restricted affect and/or decreased motivation (*See e.g.*, 1F3-4, 8, 21-23; 2F8, 17, 31, 36; 9F1), but she generally has an appropriate or normal mood and/or affect (*See e.g.*, 1F8; 2F13, 24, 35; 3F5, 21, 27-28; 9F1, 8, 12, 28, 35-36).  As documented above, her treatment providers have typically observed the claimant as being in no acute distress during appointments (*See e.g.*, 2F8, 12-13, 24, 26, 31, 35, 38; 8F4; 9F12, 28, 31-32).[115]

The Court notes that the ALJ has taken notations in medical records that Plaintiff is in no acute distress out of context.  While there is a disorder known as Acute Stress Disorder,[116] a medical notation that a patient is in "no acute distress" is simply a statement that their condition is stable and they are not in severe pain.

---

[115] AR 23.

[116] Cleveland Clinic, *Acute Stress Disorder*, www.cleveland clinic.org (Nov. 29, 2023)

1

2

3

4

5

6

7

8

9

10

While the ALJ has correctly cited to some instances in which Plaintiff has been noted to have an appropriate mood or affect, he failed to consider that those findings were made when Plaintiff presented for treatment of physical conditions and that when she has been evaluated by medical sources trained in psychiatry her mood and affect have been consistently found to be depressed, anxious, constricted or otherwise not normal.[117]  Th ALJ misstated some of these objective findings, and has taken others  out of context. Context is crucial as "treatment records must be viewed in light of the overall diagnostic record."[118]  There was only one treatment noted referenced by the ALJ which was from a source treating Plaintiff for her psychiatric conditions rather than a physical impairment, Exhibit 1F, page 8.[119]

11

_____

12

13

14

15

16

17

18

19

20

[117] *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

21

[118] *Ghanim*, 763 F.3d at 1164.

22

[119] AR 23.

23

Moreover, the ALJ's assertion that Plaintiff was noted to have a normal mood and affect at Exhibit 1F, pg 8, is clearly in error.  The examining sources, LMHC Clark and LMHC Blaine, stated as follows:

> [Plaintiff] presents as being very anxious, with rapid and pressured speech but denies any episodes of reduced need for sleep or hypomania.  She is frequently tearful and labile through the course of the assessment, and is endorsing social avoidance and restriction.[120]

Thus, the ALJ's reasoning that the record is inconsistent with her allegations is flawed and not supported by the weight of evidence.  As noted above, the treatment records of both Comprehensive Healthcare and Farm Workers Clinic, which treated Plaintiff for her mental conditions, consistently reported abnormality in mood, affect, concentration, and behavior, as well as poor judgment and insight.

Additionally, the ALJ reasoned that Plaintiff's subjective complaints were inconsistent with findings on examination that Plaintiff had normal cognition.[121] This finding is also flawed.  As courts have repeatedly noted, "the treatment records must be viewed in light of the overall diagnostic record," and a claimant's reports of suffering from severe depression and/or anxiety are not necessarily inconsistent with that claimant also presenting with normal cognitive abilities, such as "good eye contact, organized and logical thought content, and focused

---

[120] AR 302.

[121] AR 23.

attention."[122]  The ALJ improperly focused on Plaintiff's cognitive abilities while ignoring other more relevant and serious symptoms.

An ALJ must consider the basis for the limitations and not discount because of nonrelevant normal findings. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

Here, the ALJ largely ignored the psychiatric treatment record and cherry-picked findings from treatment for physical conditions to contrast with Plaintiff's allegations.  He discounted relevant findings by citing to findings that were either nonrelevant or taken out of context.  This is error.

>    b.    *The ALJ's reasoning that Plaintiff's condition improved with treatment.*

The ALJ discounted Plaintiff's reported symptoms because her condition improved with treatment.[123]

---

[122] *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety and depressive disorder on the basis that the claimant performed cognitively well during examination and was described as "upbeat," "smiling very brightly," and "more talkative about positive things").

[123] AR 24.

1

2

3

4

5

6

7

8

9

10

11

12

13

      A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms."[124] Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[125] If treatment relieves symptoms to an extent that allows the claimant to return to a level of function she had before she developed mental-disorder symptoms, such treatment can undermine a claim of disability.[126]  Reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms," as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[127]

---

14

15

16

17

18

19

20

21

22

23

[124] 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[125] *Holohan v. Massanari*, 246 F.3d1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

[126] *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

[127] *Garrison*, 759 F.3d at 1017 (cleaned up).

The ALJ failed to address the Dr. Genthe's opinion that, even if Plaintiff were to cooperate in a course of treatment, she would require a minimum of twelve months of treatment before she would be able to function adequately or consistently in a work setting.[128]  Moreover, there is no indication in the medical record that Plaintiff's condition improved to the extent that she was capable of work when actively in treatment, nor did the ALJ cite to any such evidence.  As such, Dr. Genthe's opinion stands uncontroverted and the ALJ erred in ignoring it without adequately explaining his reasoning.

c.    *The ALJ's reasoning that Plaintiff failed to seek treatment*

The ALJ also discounted Plaintiff's reported symptoms because she failed to engage in treatment. A claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[129] Yet, the ALJ must discuss whether the claimant had good cause for not seeking treatment, including whether the mental impairment contributed to her not seeking rehabilitation.[130]

---

[128] AR 440.

[129] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[130] *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions");

The ALJ rejected Plaintiff's assertion that she had gaps in treatment due to lack of medical insurance and other financial issues, because Plaintiff had Medicaid coverage and reliable transportation,.[131]  The ALJ's reasoning is flawed for two reasons, first, the record does support Plaintiff's assertion that during times that her husband was working his earnings were in excess of the limits for Medicaid and she therefore lost her Medicaid coverage.[132] Second, the ALJ failed to consider that multiple medical sources including ARNP Pingel, LMHC Goodman, PA Turner, and Dr. Genthe noted that Plaintiff had poor insight and lacked insight into her need for treatment.[133]  In fact, the best level of insight noted by psychiatric was fair.

When viewed as a whole, the record raises a question of whether Plaintiff's failure to seek treatment was intentional and willing on her part, or resulted from her mental illness.

---

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989); Soc. Sec. Rlg. 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[131] AR 24.

[132] AR 49, 52.

[133] AR 297, 324, 442

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

6.    <u>Summary</u>

Because the ALJ did not give good reasons for discounting Plaintiff's symptom reports, a remand is warranted.  Moreover, the Court finds that the question of whether Plaintiff's failure to treat is a symptom of her condition requires the opinion of a medical expert.  On remand, the ALJ is directed to consider the consistency of Plaintiff's symptoms reports with the record as a whole, and to obtain testimony of a medical expert as stated above.

**B.    Medical Opinions: Plaintiff established consequential error.**

Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Genthe, Dr. Nelson and Dr. Eisenhauer as to both supportability and consistency.   As discussed above, the ALJ failed to consider the medical record as a whole.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the consistency of the medical opinions with that of the medical advisor.

**C.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[134] When the court reverses an ALJ's

_____

[134] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

DISPOSITIVE ORDER - 30

1    decision for error, the court "ordinarily must remand to the agency for further

2    proceedings."[135]

3            The Court finds that further development is necessary for a proper disability

4    determination. Here, it is not clear what, if any, additional limitations are to be

5    added to the RFC.  Therefore, the ALJ is to obtain testimony from a medical expert

6    pertaining to Plaintiff's mental impairments, consider additional evidence

7    presented, and make findings at each of the five steps of the sequential evaluation

8    process.

9                        **IV.    Conclusion**

10           Accordingly, **IT IS HEREBY ORDERED**:

11       1.    The ALJ's nondisability decision is **REVERSED**, and this matter is

12              **REMANDED** to the Commissioner of Social Security for further

13              proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

14       2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and**

15              **12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

16

17

18    _____

19    [135] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595

20    ("[T]he proper course, except in rare circumstances, is to remand to the agency for

21    additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

22    775 F.3d 1090, 1099 (9th Cir. 2014).

23

                                                        DISPOSITIVE ORDER - 31

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 7th day of December, 2023.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge